## MADDEN v. UNITED STATES.
### Civ. No. 279–P.

District Court, N. D. Florida,

Pensacola Division.

Feb. 6, 1948.

Jones, Latham & McLane, of Pensacola, Fla., for plaintiff.

George Earle Hoffman, U. S. Atty., of Pensacola, Fla., and Hayford O. Enwall, Asst. U. S. Atty., of Gainesville, Fla., for defendant.

DE VANE, District Judge.

This is a suit by plaintiff against defendant, under the Federal Tort Claims Act, § 401 et seq., 28 U.S.C.A. § 921 et seq., to recover damages for the death of Barbara Joan Madden, the minor daughter of plaintiff. The complaint alleges that on August 13, 1946, Barbara Joan Madden, was a minor female child of the tender age of three and one-half years, and was living with plaintiff and his wife, who was the mother of said minor child; that an agent of defendant, acting in line of duty for defendant, was operating a certain motor vehicle, to-wit, a truck, in a northerly direction on the Eglin Field road about 300 feet north of the northern most municipal limits of the corporate town of Fort Walton. That said Eglin Field road was paved public highway in Okaloosa County, Florida; that at said time and place the said minor child, Barbara Joan Madden, was a pedestrian traveling in an easterly direction across said road and that at said time and place said agent of defendant, acting in line of duty for defendant, negligently and carelessly operated said truck and ran into plaintiff's said minor daughter, as a result of which she was mortally injured and wounded and died on account of said injuries, August, 14, 1946. This suit is to recover for the loss of services of such minor child and for mental pain and suffering of both parents, as authorized by Section 768.03, Florida Statutes 1941, F.S.A.

Defendant interposed three defenses, namely:

1. A denial of negligence on the part of its agent.

2. A plea of contributory negligence on the part of Barbara Joan Madden.

3. A plea of contributory negligence of plaintiff and his wife in permitting their child of such tender years to go improperly attended along and upon the heavily traveled Eglin Field road.

The two latter pleas were disallowed and the case went to trial on the defense of negligence on the part of defendant's agent. The facts are not in dispute, except as to one material matter, which will be referred to later.

The evidence shows that on August 13, 1946, Mrs, Madden sent her older daughter, a child of seven years, to a store on the Eglin Field road, a short distance from her home, to buy a package of cigarettes for plaintiff. The store was located on the same side of the public highway as was plaintiff's home. A neighbor's child, of approximately the same age, accompanied plaintiff's older daughter, and the mother permitted the deceased to accompany the two other children. When the children reached the store the merchant did not have the brand of cigarettes wanted and no purchase was made. There was another small store, located on the opposite side of the highway, a short distance from the one to which the children were sent for the cigarettes. The three children went together to a point opposite this store and the older Madden child crossed the highway for the

purpose of purchasing the brand of cigarettes desired by her father, leaving the other two children behind her. After the older Madden child got across the highway, Barbara Joan Madden left the other little girl and attempted to run across the highway to join her sister. The evidence is not clear as to whether the sister had just gotten across the highway or whether she had made the purchase of cigarettes before Barbara Joan Madden attempted to cross the highway to join her. While attempting to cross the highway she was struck by an Army truck and severely injured and died the following day as the result of the injuries received.

The evidence is in dispute as to how the accident occurred. Plaintiff introduced two witnesses who testified that deceased ran towards the opposite side of the highway, but as she was doing so her older sister began to scream at her and before she got off the highway she stopped, turned around, put her hands or arms over her eyes, and stood there until the Army truck, which was bearing down upon her, hit her, knocked her down on the pavement and passed over her, without any of the wheels of the truck touching her body. These witnesses testified that the speed of the truck, before the accident, was some 40 to 50 miles per hour.

Defendant's agent, the driver of the truck, testified that the truck was being driven in fourth gear at the time of the accident and that the speed of the truck was not more than 25 miles per hour. He testified that as he approached the scene of the accident, and while he was some distance away, he first noticed the older Madden child standing to the right of the highway and that he observed the deceased just as she started to run across the highway. He testified that he immediately applied his brakes and turned his truck to the right, skidding the rear wheels of the truck to the point where they left the highway. He testified that he did not hit the child with the front bumper of his truck, but that she ran into the truck back of him. He did not testify as to the exact point where she collided with the truck, as he could not see her, but he was positive in his testimony that she collided with the truck at a point somewhere back of the driver's seat.

Defendant introduced another witness (an Aunt of the child with the Madden children), who testified that deceased waited at the edge of the highway until an automobile, traveling south, had passed her, and then ran headlong onto the highway and into the side of the Army truck, hitting the truck somewhere near the rear wheels. She testified that she was sitting in her living room watching the children, who were standing not far from her front gate, before the young Madden child ran onto the highway.

After the accident the child was taken to the Army Base hospital at Eglin Field and attended by Dr. George W. Brooks, who operated on her in an effort to save her life. Dr. Brooks described in appropriate detail the injuries inflicted upon the body of the deceased Madden child and the nature of the operation performed by him and the cause of death. From this examination he testified that it was his considered opinion that deceased was not struck by the front bumper of the Army truck, as claimed by plaintiff's witnesses; that had she been so struck her injuries would have been different. He expressed it as his expert opinion that the injuries could have been caused only by an accident such as that described by the witness for defendant; that is to say, by the child running into the side of the truck.

From this irreconcilable conflict in the testimony, as to how the accident occurred, the court might readily dispose of same by finding (as the evidence fully warrants), that there is nothing in the record or in the conduct and demeanor of the witnesses while on the witness stand to convince the court that plaintiff's witnesses were telling the truth and defendant's witnesses were not, and holding, therefore, that plaintiff has not met the burden of proof imposed upon him by law. However, the court being of the opinion that plaintiff is not entitled to recover, even upon the evidence of his witnesses, as to how the accident occurred, the case will be disposed of upon this issue.

As pointed out above, the accident occurred a short distance north of the northernmost municipal limits of the town of Fort Walton. There are a few small business houses and quite a number of residences along each side of the Eglin Field road, where the accident occurred. It is the law in Florida, Section 317.22, Florida Statutes, F.S.A., that every motor truck of a gross weight in excess of 8000 pounds, shall observe a speed limit of 25 miles per hour, in any business or residential district outside the corporate limits of any incorporated city or town, and that any speed in excess thereof shall be considered prima facia evidence of reckless driving.

As stated above, the driver of the truck testified that the truck was being driven in fourth gear at the time of the accident and an Army official, who investigated the accident immediately after it happened, testified that the truck was in fourth gear when he examined it. There is no testimony to the contrary. The truck was equipped with a governor and a test was made immediately after the accident, to ascertain the maximum speed at which it could be driven in fourth gear. The test disclosed that the governor cut out the feeding of gas at between 34 and 36 miles per hour. The truck, therefore, could not have been being driven at the rate of speed testified to by witnesses for plaintiff. While the evidence is in conflict as to the speed of the truck, just prior to the accident, the court is of the opinion that the truck was traveling at a speed in excess of 25 miles per hour, but that its speed did not exceed 35 miles per hour.

Immediately following the accident the child was removed from the scene of the accident and taken to the hospital, but before she was removed, the place where she lay on the highway was carefully marked. The uncontradicted testimony is to the effect that the skid marks made by the rear wheels of the truck from the point where the brakes were first applied to the spot which had been marked where the child was lying, was 56 feet. The evidence also shows that the distance from where the child was lying to where the truck stopped, was 34½ feet. The truck was not only completely, but several feet off the highway when it came to a stop, and, except for the left rear wheels, was completely off the paved portion of the road at the point where the accident occurred. Dr. Brooks testified that the abrasions on the body of the child indicated that she had been dragged along the highway before she came to rest. Disregarding whether she was hit and knocked forward by the bumper, or dragged or knocked forward by the impact with the side of the truck, it is perfectly obvious that she was lying at least some feet forward from the point where the collision with the truck occurred. The evidence is to the effect that the truck was approximately 30 feet long. This gave a distance, at the outside, of less than 30 feet, and probably not more than 20 feet, between the child and the front of the truck, at the time she came to a stop on the highway in front of the truck.

The testimony shows that the truck was heavily loaded with merchandise; that it was a large ten-wheeled Army truck, and that had the truck been traveling at a greater speed than 25 miles per hour when this child stopped on the highway in front of it, the truck could not have stopped in that short distance, or swerved sufficiently to the right to avoid striking her.

The facts in this case overcome the prima facie presumption of negligence created by statute. While the court has held the deceased cannot be charged with contributory negligence, nevertheless, the testimony in this case clearly shows that her conduct and her actions were the sole proximate cause of this tragic accident.

Under the facts as disclosed by the evidence there is no legal ground upon which defendant may be held liable and a judgment will be entered for defendant.